IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GREEN ENTERPRISES, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>DUAL CORPORATE RISKS LIMITED, *et al.*,<br><br>**Defendants.** | **CIVIL NO.** 20-1243 (JAG) |

OMNIBUS OPINION AND ORDER

> "International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction, as often as questions of right depending upon it are duly presented for their determination."
>
> *The Paquete Habana*, 175 U.S. 677, 700 (1900).

GARCIA-GREGORY, D.J.

After removal from state court, Co-defendants—Hiscox Syndicates Limited at Lloyd's of London; XL Catlin Lloyd's Syndicate 2003; Amlin Lloyd's Syndicate 2001; Canopius Lloyd's Syndicate 4444; NOA Lloyd's Syndicate 3902; Blenheim Lloyd's Syndicate 5886; and Brit Lloyd's Syndicate 2987/2988 (collectively, "Underwriters")—moved to compel arbitration and dismiss Count I of the Complaint. *See* Docket Nos. 1; 2; 3. Plaintiff Green Enterprises, LLC ("Plaintiff") opposed both motions and moved to remand for lack of subject matter jurisdiction. Docket No. 7. Underwriters replied and Plaintiff sur-replied. Docket Nos. 9; 11.

The issue before the Court is two-sided. On one end, the Court must determine whether it has federal subject matter jurisdiction to compel arbitration of Plaintiff's claims, despite the

current dispute relating to the business of insurance, which is generally "reverse-preempted" by state laws in light of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15 ("MFA"). On the other, the Court must determine if the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "Convention"), and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208 ("FAA"), trump the MFA, thus making the arbitration clause at issue enforceable. To both inquiries, the Court concludes in the affirmative. This is because the MFA cannot enable Puerto Rico's Insurance Code to reverse-preempt a treaty like the Convention, or the FAA itself. Further, the Court concludes that the arbitration provision invoked by Underwriters is valid and applicable.

As such, Underwriters' Motion to Compel Arbitration is **GRANTED**, Plaintiff's claims against Underwriters are **DISMISSED WITHOUT PREJUDICE**, and Plaintiff's Motion to Remand is **DENIED**. Underwriter's Motion to Dismiss Count 1 is also **DENIED** as moot since all claims have been dismissed.[1]

## BACKGROUND[2]

On April 23, 2020, Plaintiff commenced a state court action against Underwriters, who are Insurer Syndicates of Lloyd's of London, as well as their local coverholder and representatives in Puerto Rico, alleging breach of an insurance contract and requesting declaratory judgment. Docket No. 1-3. Plaintiff alleges it obtained an international insurance policy (the "Policy") from Underwriters that covered the loss of or damage to its property in Puerto Rico, and additional expenses incurred in such a case. *Id.* at 5; *see* Docket No. 1-4. The Policy covered the period between

---

[1] Moreover, the Motion to Dismiss is flawed insofar as it only addresses the issue of arbitrability; yet, Count I also seeks declaratory judgment on multiple issues including the Policy's applicability.

[2] For purposes of this Opinion and Order, all facts are taken from Plaintiff's Complaint, Docket No. 1-3, and are presumed to be true.

October 22, 2019 and October 22, 2020. *Id.* at 1. On November 14, 2019, a fire destroyed the insured property and, consequently, Plaintiff submitted a coverage claim to Underwriters. *Id.* at 6. On April 20, 2020, Underwriters denied the claim alleging that Plaintiff misrepresented facts when negotiating the Policy. Docket No. 1-5. Underwriters also invoked the Policy's arbitration clause if Plaintiff elected to challenge the denial. *Id.*[3]

Plaintiff now seeks (1) to declare the Policy applicable and the arbitration clause null in light of Puerto Rico's Insurance Code, which proscribes arbitration provisions in insurance policies (Count I); (2) for Underwriters to pay the amount covered by the Policy (Count II); and (3) for Underwriters to pay the damages arising from the negligent and fraudulent breach of the Policy (Count III). Docket No. 1-3 at 9-11.

On May 26, 2020, Underwriters removed the state action to this Court pursuant to the Convention and the FAA, alleging that the case involves, *inter alia*, the enforcement of an arbitration clause between a foreign and an American citizen. Docket No. 1. Underwriters also filed a Motion to Compel Arbitration, contending that the Convention and the FAA both mandate arbitration of this dispute under the Policy's arbitration clause. Docket No. 2 at 5-8. Likewise,

---

[3] The Policy's arbitration clause states:

> If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and charges of the umpire.

Docket No. 1-4 at 24.

they moved for dismissal of Count I, arguing that both the Convention and the FAA preempt Puerto Rico's Insurance Code. *Id.* at 9-11; *see also* Docket No. 3 at 5.

On June 11, 2020, Plaintiff filed an omnibus opposition and motion to remand. Docket No. 7. Plaintiff argues that this Court lacks subject matter jurisdiction to compel arbitration because the MFA carves out "an exception to the general rule of federal preemption when a state law at conflict with federal law regulates the business of insurance." *Id.* at 3. It also argues that "because the Convention [and the FAA] does not specifically relate to the business of insurance, it is reverse preempted by the Puerto Rico Insurance Code," which contains an anti-arbitration provision.[4] *Id.* at 4. Underwriters replied by citing case law finding that the MFA does not permit state insurance laws to reverse-preempt the Convention and the FAA because these (1) stem from an international treaty which trumps conflicting state or federal laws, and (2) fall outside of the MFA's applicability. Docket No. 9 at 9-12.

---

[4] In relevant part, the Puerto Rico Insurance Code reads as follows:

> (1) No policy delivered or issued for delivery in Puerto Rico and covering a subject of insurance resident, located, or to be performed in Puerto Rico, shall contain any condition, stipulation, or agreement:
>
> (a) Depriving the insured of right of access to the courts for determination of his rights under the policy in event of dispute.
>
> (b) Depriving the courts of Puerto Rico of jurisdiction of action against the insurer . . . .
>
> (2) Any condition, stipulation, or agreement in violation of this section shall be void, but such voidance shall not affect the validity of the other provisions of the policy.

P.R. Laws tit. 26, § 1119; *see also Berrocales Gómez v. Tribunal Superior de P.R.*, 102 D.P.R. 224, 226-27 (1974) (under Puerto Rico Insurance law, arbitration clauses aimed at resolving disputes arising out of the parties' rights under an insurance policy are null and inoperative). Thus, requiring arbitration of the present dispute in compliance with the Convention would, as conceded by the Parties in their briefs, contravene Puerto Rico law.

## APPLICABLE LAW

### I. Motion to Remand

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *See also City of Chi. v. Int'l. Coll. of Surgeons*, 522 U.S. 156, 163-64 (1997) (citation omitted). The removing party bears the burden of showing that removal is proper. *See Danca v. Private Health Care Sys.*, 185 F.3d 1, 4 (1st Cir. 1999) (citation omitted).

### II. The Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

Federal law establishes a strong policy favoring arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Congress passed the FAA "[t]o overcome judicial resistance to arbitration . . . and place[] arbitration agreements on equal footing with all other contracts." *Id.* at 443; *see also Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir. 2005) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Ordinarily, a written agreement to arbitrate in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As written, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). The federal policy favoring arbitration is so strong that the Supreme Court has interpreted the FAA to preempt contrary state law since it "withdrew the

power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

A party seeking to compel arbitration must establish "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003).

Chapter 2 of the FAA, 9 U.S.C. §§ 201-08, implements and enforces the Convention, which was established "to provide standard procedures for the recognition and enforcement of private arbitration agreements entered into in fellow contracting states, and to recognize and enforce arbitral awards issued in such states." Brian A. Britz and César Mejía-Dueñas, *Which Law Is Supreme? The Interplay Between the New York Convention and The McCarran-Ferguson Act*, 74 U. MIAMI L. REV. 1124, 1128 (2020). In other words, the Convention, in its Articles II and III, requires signatories to "(1) recognize and enforce written agreements to submit disputes to non-domestic arbitration, and (2) enforce non-domestic arbitral awards entered in contracting states." *Id.*

Contrary to Chapter 1 of the FAA, which does not contain an independent grant of subject matter jurisdiction for domestic arbitration, Chapters 2 confers federal question jurisdiction upon district courts regardless of the amount in controversy. *See* 9 U.S.C. § 203. "An action or proceeding falling under the Convention shall be deemed to arise under the Constitution, laws or treatises of the United States." *Ledee v. Ceramiche Ragno*, 528 F. Supp. 243, 245 (D.P.R. 1981), *aff'd*, 684 F.2d 184 (1st Cir. 1982) (quoting 9 U.S.C. § 203). Like here, such arbitration-related action may be removed to federal court pursuant to 9 U.S.C. § 205. Chapter 2 also provides that a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Id.* § 206. Furthermore,

"[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, *falls under the Convention*." *Id.* § 202 (emphasis added).

To determine if a dispute "falls under the Convention," the First Circuit requires considering the following: (1) Is there a written arbitration agreement?; (2) Does it provide for arbitration in the territory of a Convention signatory?; (3) Does it arise out of a commercial relationship?; and (4) Is a party not an American citizen, or does the relationship have a reasonable relation with a foreign state? *See DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 74 (1st Cir. 2000).[5]

## III. The McCarran-Ferguson Act and Reverse Preemption

In 1945, Congress enacted the MFA "to restore the supremacy of the States in the realm of insurance regulation." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500 (1993); *see Life Partners, Inc. v. Morrison*, 484 F.3d 284, 292 (4th Cir. 2007). Generally, the Supremacy Clause of the United States' Constitution requires that a state law yield to a conflicting federal law. *See* U.S. Const. art. VI, cl. 2; *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630 (2012). The MFA, however, "transformed the legal landscape by overturning the normal rules of pre-emption." *Fabe*, 508 U.S. at 507. The statute provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). It further declares that congressional silence "shall not be construed to impose

[5] Regardless of the preemption issue at hand, the Parties do not dispute that the Policy's arbitration clause "falls under the Convention." Undoubtedly, the Policy signed by Plaintiff and Underwriters constitutes a commercial contract which includes, in principle, a valid arbitration agreement. More importantly, the Policy involves parties from different signatory states, as well as property located abroad. The dispute thus focuses on the jurisdiction to recognize and enforce said arbitration clause, and the applicability of the MFA.

any barrier" to state regulation or taxation of the business of insurance. *Id.* § 1011. Thus, the MFA authorizes "reverse preemption" of generally applicable federal statutes by state laws enacted for the purpose of regulating the business of insurance; in other words, state laws supersede conflicting federal laws when the former deal with the business of insurance and the latter does not. *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 720 (5th Cir. 2009) (*en banc*), *cert. denied*, 562 U.S. 827 (2010).

To determine whether federal laws are reverse-preempted by state insurance laws, courts consider whether (1) the state statute was enacted to regulate the business of insurance; (2) the federal statute "does not specifically relat[e] to the business of insurance"; and (3) the application of the federal statute would "invalidate, impair, or supersede" the state statute regulating insurance. *Fabe*, 508 U.S. at 500-01. To determine what constitutes the "business of insurance," courts consider whether the practice regulated (1) has the effect of transferring or spreading a policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).[6]

## ANALYSIS

Plaintiff argues that the Court lacks subject matter jurisdiction because, pursuant to the MFA, Puerto Rico's Insurance Code reverse-preempts both the Convention and the FAA and,

---

[6] Here, there is no dispute that Puerto Rico's Insurance Code regulates the business of insurance and that its application would conflict with the Convention and the FAA, which do not directly regulate the insurance industry. This is because the former proscribes insurance arbitration clauses and the latter enforces them. *See infra* n.5. As such, this case is distinguishable from *Integrand v. Assurance v. Everest Reinsurance Co., et al.*, where this Court concluded that Puerto Rico's Insurance Code did not reverse-preempt the FAA because the state provisions at play did not contravene the FAA and, thus, the third part of the MFA's reverse preemption test was not satisfied. 2020 WL 210902 at *5, *8. Here, before diving into the reverse preemption analysis, the Court must entertain whether it has jurisdiction over this dispute under the Convention or the FAA.

thus, prohibits insurance arbitration. Determining first whether reverse preemption applies here will shed light on the Court's jurisdictional basis altogether, and whether it is able to entertain the pending motions. *See Donahue v. City of Bos.*, 304 F.3d 110, 117 (1st Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998)) (finding that courts must resolve subject-matter jurisdiction issues before addressing the merits of a case).

The above inquiry is the subject of a complex circuit split.[7] The Second and Eight Circuits have held that state anti-arbitration laws reverse-preempt the Convention through the MFA because the Convention is not a self-executing treaty and therefore relies upon an "Act of Congress"—Chapter 2 of the FAA—for implementation. *See Stephens v. Am. Int'l Ins.*, 66 F.3d 41, 45-46 (2nd Cir. 1995); *Transit Cas. Co. v. Certain Underwriters at Lloyd's at London*, 119 F.3d 619, 621-22 (8th Cir. 1997). The Fourth and Fifth Circuits, on the other hand, have held that (1) the Convention is not reverse-preempted by state anti-arbitration laws because the treaty, regardless of whether it is self-executing, is no "Act of Congress"; and (2) the MFA is limited to the domestic realm and is thus not meant to grant state anti-arbitration laws reverse preemption against treaties or federal laws dealing with international relations. *See Safety Nat'l Cas. Corp.*, 587 F.3d at 717; *ESAB Grp., Inc. v. Zurich Ins.*, 685 F.3d 376, 380 (4th Cir. 2012); *see also* Britz and Mejía, *supra* at 1129-32.

While at first glance the MFA may appear to override the Convention and the FAA, three key aspects support the opposite conclusion: (1) the Convention is self-executing as relevant here; (2) even if not, the Convention does not qualify as an "Act of Congress" under the MFA and it is the Convention, not the FAA, what preempts Puerto Rico's Insurance Code; and (3) the MFA is

---

[7] Despite Underwriters' argument to the contrary, this District Court and the First Circuit have yet to squarely address this issue. In *DiMercurio v. Sphere Drake Ins., PLC*, the First Circuit concluded that a Massachusetts law that enjoined depriving state courts of jurisdiction in actions against insurers did not conflict with or void the arbitration provision at issue because such provision did not limit state court jurisdiction. 202 F.3d 71, 75 (1st Cir. 2000). Thus, arbitration was enforceable. *Id.*

not to be construed so broadly as to limit international arbitration, which is the purpose of Chapter 2 of the FAA, because the MFA was simply made to allow states to regulate domestic insurance activity. For these reasons, discussed in greater detail below, the Court holds that the MFA does not reverse preempt the Convention.

**I. The Convention is a Self-Executing Treaty**

The Supremacy Clause provides that "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. Thus, courts must regard "a treaty . . . as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision." *Foster v. Neilson*, 27 U.S. 253, 254 (1829), *overruled on other grounds by U.S. v. Percheman*, 32 U.S. 51 (1833); *see also Medellin v. Texas*, 552 U.S. 491, 505-06 (2008) ("Only [i]f the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, [will] they have the force and effect of a legislative enactment.") (cleaned up). Thus, a self-executing treaty would preempt conflicting state law by itself. *See Medellin*, 552 U.S. at 529. But if "the treaty addresses itself to the political, not the judicial department," it is not self-executing and "the legislature must execute the contract before it can become a rule for the court." *Foster*, 27 U.S. at 314. Accordingly, a treaty that is not self-executing is not afforded supremacy under the Constitution until implemented through legislation. *Id.; see also Igartua-De La Rosa v. United States*, 417 F.3d 145, 150 (1st Cir. 2005). "The interpretation of a treaty, like the interpretation of a statute, begins with the text." *Medellin*, 552 U.S. at 507, 513-14 (noting that "explicit textual expression" is the focus of the self-execution analysis).

Undoubtedly, the issue at bar involves the recognition and enforcement of an international arbitration clause; hence, Article II of the Convention is pertinent. Said Article specifically describes signatories' responsibilities in the following terms:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
>
> 3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention, *supra*, art. II.

In conformity with *Medellin*'s treaty interpretation guidelines, Article II of the Convention is self-executing. As is apparent from its text, Article II unequivocally regulates the enforcement of international arbitration agreements and directly instructs courts to enforce its provisions without the need for legislative intervention.[8] Said Article is clear and unambiguous; thus, there is no need to dive into the history of the Convention, particularly when such history is more confusing than revealing. *See ESAB Grp. Inc.*, 685 F.3d at 381-82 (describing the Convention's

---

[8] In contrast, Article III states that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles." *Id.* art. III. Contrary to Article II, Article III omits an instruction to signatory courts, addressing itself to the political branch, not the judiciary. Nevertheless, the reading of Article III by itself, which serves a separate and different purpose to that of recognizing or enforcing foreign arbitration agreements, does not discard the meaning or nature of Article II, which is pertinent here. *Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001) (noting that a treaty may "contain both self-executing and non-self-executing provisions."); *see also U.S. v. Postal*, 589 F.2d 862, 884 n.35 (5th Cir. 1979).

drafting history); *see also Safety Nat. Cas. Corp.*, 587 F.3d at 735 n.6 (Clement, J., concurring) (finding that when "the treaty text is clear, [there is] no need to rely on . . . extra-textual 'aids' to interpret its meaning" and noting that Congress's action to limit the Convention's effect prior to the treaty's accession suggests that it understood the Convention to be self-executing).

Article II states that signatory courts "shall" refer cases to arbitration when certain conditions are met. Convention, *supra*, art. II. Such compulsory language constitutes "directive[s] to domestic courts," evidencing the self-executing nature of this provision. *See Medellin*, 552 U.S. at 508 (finding that failure to include a directive to domestic courts in Article 94 of the United Nations Charter was indicative of non-self-execution). In fact, according to *Medellin*, Article II's terms are of strict compliance; that is, mandatory and not discretionary. *Id.* at 509 n.5 (distinguishing between treaty language that constitutes a commitment to future action, such as "undertakes to comply," and treaty language using "shall" or "must"). Paragraph 3 of Article II expressly instructs domestic courts in signatory countries to enforce a party's right to arbitration. *Safety Nat. Cas. Corp.*, 587 F.3d at 735-36 (Clement, J., concurring).[9]

Accordingly, by specifically addressing the courts and stating that these "shall, at the request of one of the parties, refer the parties to arbitration," Article II establishes a specific enforcement mechanism to uphold the right to arbitration between parties to an international arbitration agreement, without the need for implementing legislation. *Id.* at 734 n.4 (Clement, J., concurring). Furthermore, "when a statute which is subsequent in time is inconsistent with a treaty, the statute [] renders the treaty null"; by the same token, "if a treaty and a federal statute

---

[9] As will be discussed in the next section of this analysis, nothing in Chapter 2 of the FAA indicates that Congress understood the Convention not to be self-executing. To the contrary, the text of Chapter 2 of the FAA shows that Congress intended to ratify the treaty's self-executing intention. *See infra* II; *see also Medellin*, 552 U.S. at 505.

conflict, the one last in date will control . . . ." *Breard v. Greene*, 523 U.S. 371, 376 (1998) (cleaned up). Since the Convention was signed and ratified after the enactment of the MFA,[10] it can render the latter's preemption effect null by its own terms. In other words, the Convention, as relevant here, is fully invocable and is not subject to the MFA's reverse preemption. *See Edye v. Robertson*, 112 U.S. 580, 598-99 (1884) ("A treaty, then, is a law of the land as an act of congress is, whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined."); *Igartua–De La Rosa*, 417 F.3d at 150 (noting that treaties are considered domestic law when Congress has either enacted implementing statutes or, like here, "the treaty itself conveys an intention that it be 'self executing' and is ratified on these terms.").

Perhaps most importantly, reverse preemption of international treaties like the Convention would severely hinder the uniform and national character required by the Supremacy Clause. *See* Britz and Mejía, *supra* at 1139; *see also ESAB Grp. Inc.*, 685 F.3d at 390 (citing *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976)) ("[T]he federal government must be permitted to 'speak with one voice when regulating commercial relations with foreign governments.'"). And with the Convention and Chapter 2 of the FAA, the federal government established a uniform policy favoring enforcement of international arbitration agreements even when "a contrary result would be forthcoming in a domestic context." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*, 473 U.S. 614, 629 (1985) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516-17 (1974)).[11]

In reaching this conclusion, the Court is mindful that courts dealing with the Convention have generally shied away from labeling it as self-executing. Ironically, however, both the Fourth

---

[10] The Convention was signed and ratified in 1959 and 1970, respectively; the MFA was enacted in 1945. *See* Britz and Mejía, *supra* at 1139-40.

[11] *See also* Harold Hongju Koh, *International Law as Part of Our Law*, 98 AM. J. OF INT'L. L. 43 (2004).

and Fifth Circuit have suggested that there are solid arguments in favor of Article II's self-executing nature. *ESAB Grp. Inc.*, 685 F.3d at 387 ("There is much to recommend this position. Most notably, the starting point of treaty interpretation is the text . . . ."). The Fifth Circuit, in fact, went as far as to apply *Medellin*'s reasoning and recognized that "[t]he Convention expressly states that domestic courts 'shall' compel arbitration when requested by a party to an international arbitration agreement . . . [and that it] additionally sets forth limited procedures to be followed in obtaining enforcement of an arbitration award." *Safety. Nat. Cas. Corp.*, 587 F.3d at 722.[12]

Lastly, *Medellin* laid the foundation to evaluate if Article II of the Convention is self-executing in 2008, after the Second and Eight Circuits had held that the Convention was non-self-executing. As such, Plaintiff cannot now rely on Second and Eight Circuit jurisprudence, ignoring *Medellin's* guidance on the matter.

Accordingly, the Court finds that a plain reading of Article II evidences its self-executing nature as to the enforcement of international arbitration agreements. It follows that since the Convention was signed and ratified after the enactment of the MFA, it can render the latter's preemption effect null. *See Breard*, 523 U.S. at 376. Hence, the Puerto Rico Insurance Code's anti-arbitration provision is thus superseded by the Convention, which in turn makes the arbitration clause in the Policy invocable. *See Edye*, 112 U.S. at 598-99; *Igartua–De La Rosa*, 417 F.3d at 150.

---

[12] The Court also notes that in *Medellin*, while analyzing the United States' obligation to "recognize arbitral awards as binding" pursuant to Article III of the Convention, the Supreme Court determined that the Convention is in part non-self-executing. *Medellin*, 552 U.S. at 521-22. However, this was determined by way of *dicta* and the Supreme Court did not discuss Article II of the Convention. Thus, because a treaty can be both non-self-executing and self-executing in nature, the Supreme Court left the door open for courts to find that Article II is self-executing. *See* RESTATEMENT (THIRD) THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 111 cmt. h (1986) ("Some provisions of an international agreement may be self-executing and others non-self-executing."); *see also United States v. Postal*, 589 F.2d 862, 884 n.35 (5th Cir. 1979) ("A treaty need not be wholly self-executory or wholly executory."). This is precisely what the Court does today.

## II. The Convention is not an "Act of Congress" under the MFA and Preempts Puerto Rico's Insurance Code

Plaintiff's claim is also grounded on the assumption that, because the Convention's enabling legislation, the FAA, is an "Act of Congress" within the meaning of the MFA, it cannot be construed "to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . ." Docket Nos. 7 at 8; 11 at 11. However, even assuming *arguendo* that the Convention is not self-executing,

> that does not mean that Congress intended an "Act of Congress," as that phrase is used in the [MFA], to encompass a non-self-executing treaty that has been implemented by congressional legislation. Implementing legislation that does not conflict with or override a treaty does not replace or displace that treaty. A treaty remains an international agreement or contract negotiated by the Executive Branch and ratified by the Senate, not by Congress. The fact that a treaty is implemented by Congress does not mean that it ceases to be a treaty and becomes an "Act of Congress."

*Safety Nat. Cas. Corp.*, 587 F.3d at 722-23 (also explaining that "[t]he commonly understood meaning of an 'Act of Congress' does not include a 'treaty' . . . .").

Moreover, this Court is perfectly aligned with the theory that it is not necessarily the FAA, but the Convention, that grants federal jurisdiction and preempts state anti-arbitration laws here. Again, this is buttressed by the fact that implementing legislation that does not conflict with a treaty, as is the case here with Chapter 2 of the FAA, does not replace or displace the treaty. *See id.* at 722-23; *see also Whitney v. Robertson*, 124 U.S. 190, 194 (1888); *Breard*, 523 U.S. at 376. Thus, the Convention has full preemptory force even if Chapter 2 of the FAA implements it in some way.

Even more, Chapter 2 of the FAA specifically points at the Convention, not an "Act of Congress," as the source of law that supersedes state law and allows for foreign arbitration agreements to be enforced in domestic courts. For example, 9 U.S.C. § 203 provides that "[a]n

action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." This suggests that Congress did not intend the jurisdictional basis to enforce rights under the Convention to arise solely under an "Act of Congress." *See Safety. Nat. Cas. Corp.*, 587 F.3d at 724. In fact, Chapter 2 of the FAA in general reiterates the phrase "falls under the Convention" as if to direct the reader to the treaty; thus, as concluded by the Fifth Circuit, "it is *the Convention* under which legal agreements fall; it is an action or proceeding under *the Convention* that provides the court with jurisdiction; such an action or proceeding is deemed to arise under the laws *and treaties* of the United States []; and when chapter 1 of title 9 (the FAA) conflicts with the Convention, *the Convention* applies." *Id.* at 724-25 (cleaned up).

## III. The MFA is Not to be Construed so Broadly as to Limit International Commercial Arbitration Rather than Domestic Affairs

Lastly, the starting point in deciphering congressional intent is the text of the statute itself. *See United States v. Charles George Trucking Co.*, 823 F.2d 685, 688 (1st Cir. 1987). To the extent that Congress does not define certain words, the Court assumes those words "carry their plain and ordinary meaning." *Stornawaye Fin. Corp. v. Hill (In re Hill)*, 562 F.3d 29, 32 (1st Cir. 2009). If a statute's plain meaning supplies a plausible interpretation, the inquiry ends; except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982).

In considering a conflict between Chapter 2 of the FAA and a federal statute, the Supreme Court has said that "[i]f the United States is to be able to gain the benefits of international accords and have a role as a trusted partner in multilateral endeavors, its courts should be most cautious before interpreting its domestic legislation in such manner as to violate international

agreements." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539 (1995) (rejecting an interpretation of the Carriage of Goods by Sea Act that would have barred enforcement of an arbitration provision in an international commercial agreement). A statute ought to be construed consistent with the law of nations. *Murray v. Schooner Charming Betsy*, 6 U.S. 64, 118 (1804).

In *Am. Ins. Ass'n v. Garamendi*, the Supreme Court specified that the MFA was "directed to implied preemption by domestic commerce legislation." 539 U.S. 396, 428; *see also id.* ("[T]he point of McCarran–Ferguson's legislative choice of leaving insurance regulation generally to the States was to limit congressional preemption under the commerce power, whether dormant or exercised."). *Garamendi* "demonstrate[s] that Congress did not intend for the [MFA] to permit state law to vitiate international agreements entered by the United States." *ESAB Group, Inc.*, 685 F.3d at 389 (cleaned up); *see also Garamendi*, 539 U.S. at 428 (citing *FTC v. Travelers Health Ass'n*, 362 U.S. 293, 300 (1960) (stating that the MFA was not intended to permit a state to "regulate activities carried on beyond its own borders.")). It is well recognized then that the MFA clearly did not intend to grant states authority over foreign affairs.

Even more, the Fourth Circuit has repeatedly refused to give the MFA the broad scope urged by Plaintiff or found that certain substantive statutes are outside of the MFA's reverse preemption rule. *See, e.g.*, *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000) (expressing "skepticism" that Congress intended the MFA to apply to statutes governing federal subject-matter jurisdiction); *Stephens v. Nat. Distillers & Chemical Corp.*, 69 F.3d 1226, 1231 (2nd Cir. 1995) (concluding that "international-law origins of the FSIA," are "so different from the kind of congressional statutory action that the [MFA] was enacted to deal with," that they "virtually compel[led] the conclusion" that the [MFA] did not authorize state law to displace the FSIA); *see also id.* at 1233 (concluding that the MFA did not alter preemption "so drastically as to force a

federal law that clearly intends to preempt all other state laws to give way simply because the insurance industry is involved.").[13]

Likewise, the Supreme Court has concluded that the Convention and Chapter 2 of the FAA instruct courts to "subordinate domestic notions of arbitrability to international policy favoring commercial arbitration." *Mitsubishi Motors Corp.*, 473 U.S. at 639. Not only that, but the Supreme Court admitted having declined "to subvert the spirit of the United States' accession to the Convention by recognizing subject matter exceptions where Congress has not expressly directed the courts to do so." *Id.* at 639 n.21. Yet, the MFA does not contain such a direction and instead *Garamendi* limits the MFA to "domestic commerce legislation." *Garamendi*, 539 U.S. at 428; *see also ESAB Grp., Inc.*, 685 F.3d at 390 ("Congress might opt to exclude insurance disputes from the Convention. But it has not done so with the [MFA]. Nothing in [it] suggests that . . . Congress intended to delegate to the states the authority to abrogate international agreements . . . ."). Hence, refusal to enforce the arbitration provision at issue here would impair the Convention's very own purposes: resolving disputes "essential to any international business transaction" and ensuring parties are not haled into inappropriate forums. *Scherk*, 417 U.S. at 516-17. A contrary conclusion, like that espoused by Plaintiff, would produce an absurd result, allowing state authority to displace international mandates.

For the reasons enumerated above, both the Convention and Chapter 2 of the FAA effectively preempt Puerto Rico's Insurance Code, and the MFA does not exempt the state law at

---

[13] *Stephens v. Nat. Distillers & Chem. Corp.* is particularly relevant here because it questioned a previous ruling of the same Circuit concluding that the MFA reverse-preempted the FAA. Specifically, it noted without deciding that the federal preemption reasoning favoring MFA preclusion by the FSIA might apply with Chapter 2 of the FAA. *Id.* at 1233 n.6.

bar from being superseded. Moreover, the Policy's arbitration clause "falls under the Convention" and is valid, binding and invocable.[14] *InterGen N.V.*, 344 F.3d at 142.

## CONCLUSION

Accordingly, Underwriters' Motion to Compel Arbitration is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE**, and Plaintiff is ordered to arbitrate these claims in accordance with the Policy's arbitration clause. Plaintiff's Motion to Remand is **DENIED** and Underwriter's Motion to Dismiss Count 1 is also **DENIED** as moot since all claims have been dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of June, 2021.

/s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
Senior United States District Judge

---

[14] Alternatively, Plaintiff argues that because paragraph 3 of Article II of the Convention states that the Convention "does not apply to agreements that are null and void, inoperative or incapable of being performed, but does not define those terms, those gaps are to be filled by domestic law." Docket No 7 at 15-16. This argument is futile. First, it is underdeveloped. *See U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I] issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Second, Plaintiff cannot argue for the arbitration clause's voidness by invoking conflicting (and preempted) state law. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637 (2020) is distinguishable for the reasons stated in Underwriter's opposition: "unlike in *GE Power*, the domestic law at issue here directly conflicts with the FAA and the Convention." Docket No. 9 at 13. And, again, any state "principle of law contrary to the convention and FAA's are superseded, regardless of the Policy's choice-of-law provision." *Id.; see also Ledee*, 684 F.2d at 187 ("Indeed, by acceding to and implementing the treaty, the federal government has insisted that not even the parochial interests of the nation may be the measure of interpretation. Rather, the clause must be interpreted to encompass only those situations-such as fraud, mistake, duress, and waiver-that can be applied neutrally on an international scale.") (cleaned up).